# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PURNA BAHADUR OLI, | Case No. 1:26-cv-01437-JLT-SAB-HC |
| Petitioner, | FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF |
| v. | HABEAS CORPUS AND DIRECT RESPONDENTS TO PROVIDE |
| CHRISTOPHER CHESTNUT, et al., | PETITIONER WITH BOND HEARING BEFORE IMMIGRATION JUDGE |
| Respondents. | ORDER TERMINATING REQUEST FOR STATUS |
| | (ECF No. 8) |

Petitioner, represented by counsel, is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

**I.**

**BACKGROUND**

Petitioner is a citizen of Nepal with no criminal history who, upon entering the United States in January 2025 without inspection, was arrested and has never been released from custody following this initial arrest. (ECF No. 1 at 4, 9, 12.[1]) Petitioner is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the California City Corrections Center in California City, California. (Id. at 4, 10.) On February 26, 2025, a Notice to Appear in § 1229a proceedings was issued. Petitioner's first hearing was scheduled for April 18, 2025. On or

---

[1] Page numbers refer to ECF page numbers stamped at the top of the page.

1

around August 6, 2025, Petitioner filed an application for asylum with the immigration court. Petitioner's hearing date was cancelled when Petitioner was transferred to his current facility on August 31, 2025 and has not been rescheduled as of February 18, 2026. Petitioner filed requests for bond on April 17, 2025, July 8, 2025, and October 23, 2025. Petitioner's requests for bond were denied because the immigration judge found no jurisdiction. (ECF No. 1 at 9–10.)

On February 18, 2026, Petitioner filed a petition for writ of habeas corpus, challenging his prolonged immigration detention on due process grounds. (ECF No. 1.) Petitioner also filed a motion for temporary restraining order, which was denied as untimely by the assigned district judge. (ECF Nos. 2, 4.) On February 19, 2026, the Court ordered Respondents to file a responsive pleading within thirty days. (ECF No. 4.) To date, no response has been filed, and the time for doing so has passed.

## II.

## DISCUSSION

### A. Overview of Caselaw Regarding Immigration Detention Statutes

An intricate statutory scheme governs the detention of noncitizens during removal proceedings and after a final removal order is issued. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Four statutes grant the Government authority to detain noncitizens who have been placed in removal proceedings: 8 U.S.C. §§ 1225(b) ('Section 1225(b)'), 1226(a) ('Subsection A'), 1226(c) ('Subsection C'), and 1231(a) ('Section 1231(a)')." Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023). "Subsection A is the default detention statute for noncitizens in removal proceedings and applies to noncitizens '[e]xcept as provided in [Subsection C].'" Avilez, 69 F.4th at 529 (alteration in original) (quoting 8 U.S.C. § 1226(a)). "[D]etention under Subsection A is discretionary" and "provides for release on bond or conditional parole." Id. "Subsection C provides for the detention of 'criminal aliens' and states that '[t]he Attorney General shall take into custody any alien who' is deportable or inadmissible based on a

qualifying, enumerated offense." Avilez, 69 F.4th at 530 (alteration in original) (quoting 8 U.S.C. § 1226(c)). "[D]etention under Subsection C is mandatory," and "[r]elease under Subsection C is limited to certain witness protection purposes." Id. "Section 1231(a) applies to detention after the entry of a final order of removal" and "governs detention during a ninety-day 'removal period' after the conclusion of removal proceedings." Id. at 530–31.

"[I]n a series of decisions since 2001, 'the Supreme Court and [the Ninth Circuit] have grappled in piece-meal fashion with whether the various detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing.'" Rodriguez v. Robbins (Rodriguez II), 715 F.3d 1127, 1134 (9th Cir. 2013) (quoting Rodriguez v. Hayes (Rodriguez I), 591 F.3d 1105, 1114 (9th Cir. 2010)). In Zadvydas v. Davis, 533 U.S. 678 (2001), two noncitizens, who had been ordered removed but whose removal could not be effectuated due to lack of a repatriation treaty or because their designated countries refused to accept them, challenged their prolonged detention under 8 U.S.C. § 1231(a)(6), which governs detention beyond the ninety-day removal period. Applying the canon of constitutional avoidance because a "statute permitting indefinite detention of an alien would raise a serious constitutional problem," the Supreme Court "read an implicit limitation into" § 1231(a)(6) and held that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. Thus, "after a presumptively reasonable six-month period of post-removal period detention, the alien was entitled to release if he successfully demonstrated that there was 'good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future.'" Prieto-Romero, 534 F.3d at 1062 (quoting Zadvydas, 533 U.S. at 701).

In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court rejected a facial challenge to mandatory detention under 8 U.S.C. § 1226(c). Demore distinguished Zadvydas by emphasizing detention under § 1226(c) has a "definite termination point" and "in the majority of the cases it lasts for less than the 90 days we considered presumptively valid in Zadvydas." Id. at 529 (noting that "in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days" and "[i]n the

remaining 15% of cases, in which the alien appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter").[2] However, Justice Kennedy's concurring opinion, which created the majority rejecting the facial challenge to mandatory detention under § 1226(c), specifically noted that "a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Demore, 538 U.S. at 532 (Kennedy, J., concurring).

In the Rodriguez class action, noncitizens "challenge[d] their prolonged detention pursuant to 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a) without individualized bond hearings and determinations to justify their continued detention." Rodriguez v. Robbins (Rodriguez III), 804 F.3d 1060, 1065 (9th Cir. 2015). In Rodriguez II, to avoid constitutional concerns, the Ninth Circuit held that mandatory detention under § 1226(c) and § 1225(b) is implicitly time-limited and expires after six months. Thereafter, the government's authority to detain shifts to § 1226(a), which requires a bond hearing governed by the procedural requirements set forth in Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011).[3] Rodriguez II, 715 F.3d at 1138–44. In Rodriguez III, the Ninth Circuit held that for noncitizens detained under 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), "the government must provide periodic bond hearings every

---

[2] "Thirteen years after the decision in Demore, the government admitted that the figures it provided to the Court, and which the Court relied on, contained 'several significant errors.'" Rodriguez v. Nielsen, No. 18-cv-04187-TSH, 2019 WL 7491555, at *5 (N.D. Cal. Jan. 7, 2019) (citations omitted). Although the "Supreme Court had inferred from the government's brief in Demore that in cases in which the alien appeals, the time of detention was 'about five months,'" the government's 2016 letter clarified that for years 1999–2001, the "length of detention in cases where the alien appealed [was] 382 days, or a little more than a year." Id. (citations omitted).

> [I]n cases in which an appeal *was* filed, in most years the *average* length of detention was more than 300 days, or more than double the five-month estimate the Court relied on in Demore. The data from the Jennings case show that 460 members of the respondent section 1226(c) subclass were detained for an average of 427 days (over fourteen months) with some individual detention periods exceeding four years. Indeed, when the GAO conducted a study, it found that as of 2015, the median length of time it takes the BIA to complete an appeal of a removal order exceeds 450 days.

Rodriguez, 2019 WL 7491555, at *5 (citations omitted).

[3] In Singh, the Ninth Circuit provided guidance as to the procedural requirements for the bond hearings. Specifically, "the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond." Singh, 638 F.3d at 1208. Due process also requires a contemporaneous record of the bond hearings, such as a transcript or audio recording. Id.

six months so that noncitizens may challenge their continued detention as 'the period of . . . confinement grows.'" Rodriguez III, 804 F.3d at 1089 (quoting Diouf v. Napolitano (Diouf II), 634 F.3d 1081, 1091 (9th Cir. 2011)).

In Jennings v. Rodriguez, 583 U.S. 281 (2018), the Supreme Court rejected the Ninth Circuit's interpretation that §§ 1225(b) and 1226(c) included "an implicit 6–month time limit on the length of mandatory detention" and reversed Rodriguez III, holding that the Ninth Circuit misapplied the constitutional avoidance canon to find a statutory right under 8 U.S.C. § 1226(a) to "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." Jennings, 583 U.S. at 296, 304, 306. The Supreme Court remanded the case to the Ninth Circuit "to consider [the] constitutional arguments on their merits." Id. at 312. The Ninth Circuit, in turn, remanded the case to the district court to consider the constitutional arguments in the first instance, but noted that it had "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the arbitrary deprivation of liberty would have thought so." Rodriguez v. Marin, 909 F.3d 252, 255, 256 (9th Cir. 2018).

Following Jennings, the Ninth Circuit upheld the "construction of § 1231(a)(6) to require a bond hearing before an IJ after six months of detention for an alien whose release or removal is not imminent" with the government "bear[ing] a clear and convincing burden of proof at such a bond hearing to justify an alien's continued detention." Aleman Gonzalez v. Barr, 955 F.3d 762, 766 (9th Cir. 2020). The Supreme Court reversed on other grounds, Garland v. Aleman Gonzalez, 596 U.S. 543, 546 (2022), and "[i]n a companion case decided that same day arising from the Third Circuit, *Johnson v. Arteaga-Martinez*, [596] U.S. [573], 142 S. Ct. 1827, 213 L.Ed.2d 125 (2022), the Supreme Court separately rejected [the Ninth Circuit's] statutory interpretation in *Aleman Gonzalez*," Rodriguez Diaz v. Garland, 53 F.4th 1189, 1201 (9th Cir. 2022), holding that "there is no plausible construction of the text of § 1231(a)(6) that requires the Government to provide bond hearings before immigration judges after six months of detention, with the Government bearing the burden of proving by clear and convincing evidence that a

detained noncitizen poses a flight risk or a danger to the community," Arteaga-Martinez, 596 U.S. at 581. Arteaga-Martinez declined to reach the constitutional claims. Id. at 583.

"[A]fter the Supreme Court's decisions in *Jennings* and *Arteaga-Martinez*, it remain[ed] undetermined whether the Due Process Clause requires additional bond procedures under *any* immigration detention statute" until the Ninth Circuit's decision in Rodriguez Diaz, which concerned a petitioner detained pursuant to 8 U.S.C. § 1226(a) who sought a second bond hearing before an IJ at which the government would bear the burden of proof by clear and convincing evidence. Rodriguez Diaz, 53 F.4th at 1201, 1193. The Ninth Circuit held that "due process does not require the procedures Rodriguez Diaz would have us impose" because "Section 1226(a) offers substantial procedural protections to detained persons, and Rodriguez Diaz has not shown that these procedures violate due process, either facially or as applied." Id.

### B. Procedural Due Process

The petition asserts that Petitioner's detention, which has lasted more than one year with no foreseeable end in sight, is prolonged, and that continued detention without a hearing violates due process. (ECF No. 1 at 13.)

Here, Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b). The Ninth Circuit has yet to take a position on whether due process requires a bond hearing for noncitizens detained under 8 U.S.C. § 1225(b). However, the Ninth Circuit has recognized that "district courts throughout this circuit have ordered immigration courts to conduct bond hearings for noncitizens held for prolonged periods under § 1226(c)" based on due process and noted that "[a]ccording to one such court order, the 'prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process.'" Martinez v. Clark, 36 F.4th 1219, 1223 (9th Cir. 2022) (citation omitted), vacated on other grounds, 144 S. Ct. 1339 (2024). Further, the First, Second, and Third Circuits have found that "the Due Process Clause imposes some form of 'reasonableness' limitation upon the duration of detention . . . under [section 1226(c)]." Reid v. Donelan, 17 F.4th 1, 7 (1st Cir. 2021) (alterations in original) (citation omitted). Accord Black v. Decker, 103 F.4th 133, 138 (2d Cir. 2024) ("conclud[ing] that a noncitizen's constitutional right to due process precludes his unreasonably

prolonged detention under section 1226(c) without a bond hearing"); German Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203, 209–10 (3d Cir. 2020) (holding that after Demore and Jennings, petitioners detained pursuant to § 1226(c) can still bring as-applied challenges to their detention and that due process affords them a bond hearing once detention becomes unreasonable). Contra Banyee v. Garland, 115 F.4th 928 (8th Cir. 2024).

Based on the foregoing, the Court recommends finding that unreasonably prolonged mandatory detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process. The Court now turns to whether Petitioner's detention has become unreasonably prolonged such that due process requires a bond hearing.

Courts in this circuit have taken various approaches to determining whether procedural due process requires a bond hearing in a particular case. See Rodriguez v. Nielsen, No. 18-cv-04187-TSH, 2019 WL 7491555, at *6 (N.D. Cal. Jan. 7, 2019) (six-month bright-line rule in § 1226(c) context); Banda v. McAleenan, 385 F. Supp. 3d 1099, 1117 (W.D. Wash. 2019) (six-factor test that considers "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal" in § 1225(b) context); Juarez v. Wolf, No. C20-1660-RJB-MLP, 2021 WL 2323436, at *4 (W.D. Wash. May 5, 2021) (eight-factor test that considers "whether the detention will exceed the time the petitioner spent in prison for the crime that made him [or her] removable" and "the nature of the crimes the petitioner committed" in addition to the six factors set forth above in § 1226(c) context (alteration in original)), report and recommendation adopted, 2021 WL 2322823 (W.D. Wash. June 7, 2021); Henriquez v. Garland, No. 5:22-cv-00869-EJD, 2022 WL 2132919, at *5–6 (N.D. Cal. June 14, 2022) (applying Mathews v. Eldridge test to petitioner's due process claim requesting initial bond hearing in § 1226(c) context).

This Court previously found that "[t]o determine whether § 1226(c) detention has become unreasonable, the Court will look to the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the

government." Lopez v. Garland, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022) (noting Mathews factors more suited to determining whether due process requires a second bond hearing and rejecting other multi-factor tests). The Court will apply the three Lopez factors.

1.  Total Length of Detention to Date

Petitioner has been in immigration detention for approximately fifteen months since January 2025. Courts have found shorter lengths of mandatory immigration detention without a bond hearing to be unreasonable. See, e.g., Black, 103 F.4th at 137–38 (affirming district court judgment ordering bond hearing for petitioner detained seven months); Perera v. Jennings, No. 21-cv-04136-BLF, 2021 WL 2400981 (N.D. Cal. June 11, 2021) (granting TRO and ordering individualized bond hearing for petitioner detained almost two months); Sajous v. Decker, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *1, 11 (S.D.N.Y. May 23, 2018) (granting preliminary injunction and ordering individualized bond hearing for petitioner detained more than eight months); Jarpa v. Mumford, 211 F. Supp. 3d 706, 710, 717 n.6 (D. Md. 2016) (granting habeas relief and ordering individualized bond hearing for petitioner detained nearly eleven months).

"In general, '[a]s detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing.'" Gonzalez v. Bonnar, No. 18-cv-05321-JSC, 2019 WL 330906, at *3 (N.D. Cal. Jan. 25, 2019) (alteration in original) (quoting Muse v. Sessions, 409 F. Supp. 3d 707, 716 (D. Minn. 2018)). Here, Petitioner has been detained for one year and three months. Accordingly, the Court finds that the total length of detention factor weighs in favor of Petitioner.

2.  Likely Duration of Future Detention

"[A]s have nearly all the other courts to consider this issue . . . the starting point of the analysis is the length of detention—both how long the petitioner has been detained and *how long the detention is likely to last*." Gonzalez, 2019 WL 330906, at *5 (emphasis added) (collecting cases). "When the alien's removal proceedings are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable." German Santos, 965 F.3d at 211.

///

Here, Respondents issued a Notice to Appear in § 1229a proceedings on February 26, 2025. Petitioner's first hearing was scheduled for April 18, 2025. Petitioner filed an application for asylum with the immigration court on or around August 6, 2025. Petitioner's hearing date was cancelled when Petitioner was transferred to his current facility on August 31, 2025 and has not been rescheduled as of February 18, 2026. (ECF No. 1 at 9–10.) Petitioner asserts that his "case has been rescheduled over the last year due to administrative decisions and transfers at the sole discretion of Respondents." (Id. at 10.) Petitioner states that "[e]ven if a negative decision is issued some indefinite date in the future, Petitioner is likely to appeal and will remain detained during that process," "appeals on the merits for detained cases are routinely taking over six months and likely surpass a year in more recently filed cases," and if "Petitioner's appeal is denied at the Board of Immigration Appeals, he would still have statutory right to seek review from the Ninth Circuit Court of Appeals," which could "take[] months or longer." (ECF No. 1 at 10.) Petitioner thus contends that "Petitioner's future detention is likely to last many more months, if not years, if he is not released at a bond hearing." (Id.)

Although future events are difficult to predict, the Court nevertheless finds that given Petitioner does not have a scheduled hearing date in immigration court, the likely duration of future detention is sufficiently lengthy such that this factor weighs in favor of Petitioner. See German Santos, 965 F.3d at 212 (finding appeal of cancellation of removal order with the BIA "could take months" and potential review in the Third Circuit "would add months more in prison" such that "the likelihood that [petitioner's] detention will continue strongly supports a finding of unreasonableness"); Banda, 385 F. Supp. 3d at 1119 (finding appeal of removal order with the BIA and review in the Ninth Circuit may take up to two years or longer and favors granting petitioner a bond hearing).

    3.   Delays in Removal Proceedings Caused by Petitioner and Government

Petitioner contends that "[i]t appears that all or most delays are attributable to administrative decisions to relocate and/or reschedule Petitioner's case and not due to delay from the Petitioner except a brief period requested to prepare evidence at the outset of the process." (ECF No. 1 at 12.) "Thereafter, all delays were attributable to respondents including due to

transfer between detention facilities and due to the immigration judge not appearing at the schedule date and time for hearing on the merits of the application." (Id.) Accordingly, the Court finds that the delay factor is neutral.

### 4. Weighing the Factors

The Court appreciates that the government has a strong interest in enforcing immigration laws, ensuring the presence of noncitizens at their removal proceedings, and protecting the public from danger. However, the "government interest at stake here is not the continued detention of Petitioner, but the government's ability to detain [Petitioner] *without a bond hearing*." Zagal-Alcaraz v. ICE Field Off., No. 3:19-cv-01358-SB, 2020 WL 1862254, at *7 (D. Or. Mar. 25, 2020) (emphasis added), report and recommendation adopted, 2020 WL 1855189 (D. Or. Apr. 13, 2020). See Henriquez, 2022 WL 2132919, at *5 ("Although the Government has a strong interest in enforcing the immigration laws and in ensuring that lawfully issued removal orders are promptly executed, the Government's interest in detaining Petitioner without providing an individualized bond hearing is low."). On the other hand, it "is beyond dispute" that Petitioner's interest here is "fundamental." Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). "Freedom from imprisonment— from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. Both the length of detention to date, "which is the most important factor," Banda, 385 F. Supp. 3d at 1118,[4] and the likely duration of future detention weigh in favor of finding continued detention unreasonable. The delay factor is neutral. Accordingly, the Court recommends finding that Petitioner's continued detention has become unreasonable and due process requires that Petitioner be provided a bond hearing.

### C. Remedy

"The Court finds, consistent with other post-Jennings cases, that the appropriate remedy is a bond hearing before an immigration judge[.]" Lopez, 631 F. Supp. 3d at 882. The Court further finds that "the government must prove by clear and convincing evidence that an alien is a

---

[4] Accord German Santos, 965 F.3d at 211 ("The most important factor is the duration of detention.")

flight risk or a danger to the community to justify denial of bond" and that the bond hearing must comport with the other requirements of Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011). See Martinez v. Clark, 124 F.4th 775, 785 (9th Cir. 2024) (stating that "the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that Martinez is a danger to the community" with respect to a bond hearing ordered pursuant to the Due Process Clause); Black, 103 F.4th at 159 (affirming district court's order "requir[ing] the government to show at such a bond hearing, by clear and convincing evidence, the need for Black's continued detention" under § 1226(c)); German Santos, 965 F.3d at 214 (holding that in order to justify a noncitizen's continued detention under § 1226(c) "the Government bears the burden of persuasion by clear and convincing evidence. That evidence must be individualized and support a finding that continued detention is needed to prevent him from fleeing or harming the community"); Juarez, 2021 WL 2323436, at *8 (requiring bond hearing to comport with requirements of Singh); Banda, 385 F. Supp. 3d at 1120–21 (same); Djelassi v. ICE Field Off. Dir., 434 F. Supp. 3d 917, 923–24 (W.D. Wash. 2020) (same); Martinez v. Clark, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *11 (W.D. Wash. May 23, 2019) (same and collecting cases), report and recommendation adopted, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019).

In the event Petitioner is "determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond," the immigration judge should consider Petitioner's financial circumstances and alternative conditions of release. Hernandez, 872 F.3d at 1000. See Black, 103 F.4th at 138 (The district court "correctly directed the immigration judge ('IJ'), in setting his bond and establishing appropriate terms for his potential release, to consider his ability to pay and alternative means of assuring appearance.").

### III.

### RECOMMENDATIONS & ORDER

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus be GRANTED.

2. Respondents be ordered to provide Petitioner with an individualized bond hearing before an immigration judge within five (5) days that complies with the requirements set forth in

Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011), and where "the government must prove by clear and convincing evidence that [Petitioner] is a flight risk or a danger to the community to justify denial of bond," id. at 1203. In the event Petitioner is "determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond," the immigration judge should consider Petitioner's financial circumstances and alternative conditions of release. Hernandez v. Sessions, 872 F.3d 976, 1000 (9th Cir. 2017).

Further, Petitioner's request for status (ECF No. 8) is TERMINATED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections with the Court, **limited to fifteen (15) pages in length, including any exhibits**. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **April 3, 2026**

STANLEY A. BOONE
United States Magistrate Judge

12